IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JLJN INC. DBA WASH N GO,<br>9150 FRASER LN<br>CHESTER TWP OH 44026<br><br>JOHN KNOBLE<br>9150 FRASER LN<br>CHESTER TWP OH 44026<br><br>Plaintiffs,<br><br>vs.<br><br>MICROLOGIC ASSOCIATES, LLC,<br>28 EASTMANS RD,<br>PARSIPPANY, NJ 07054<br>Defendant. | CASE NO.<br><br>JUDGE<br><br>**<u>PLAINTIFFS' COMPLAINT</u>**<br><br>*Demand For Jury Trial Endorsed Hereon* |

**PARTIES AND NATURE OF CLAIM**

1. This is a commercial action arising from Defendant Micrologic's sale of defective car wash equipment, failure to provide contracted maintenance and support, premature termination of agreements, and withholding of critical operational data, causing substantial financial damages to Plaintiff.

2. Plaintiff JLJN Inc. dba Wash N Go, LLC ("Wash N Go") is an Ohio corporation operating car wash facilities in Bedford and North Randall, Ohio.

3. Plaintiff John Knoble is the owner of Wash N Go and an individual residing in Chester Township. Ohio.

4. Defendant Micrologic Associates, LLC ("Micrologic") is a New Jersey entity engaged in the manufacture, design, sale, installation, and servicing of proprietary car wash systems, including kiosks, payment systems, and software platforms and helps optimize the businesses of companies operating in the car wash industries nationwide.

5. At all relevant times, Micrologic conducted business in Ohio and supplied goods and services to Wash N Go in Ohio.

## FACTUAL ALLEGATIONS

### A. Purchase of Equipment and Relationship

6. In or around 2017, Wash N Go purchased Micrologic equipment for its first location at 5183 Northfield Rd., Bedford, Ohio ("Site 1"), for a total exceeding $100,000.

7. In or around 2018, Wash N Go purchased additional Micrologic equipment for its second location at 5403 Northfield Rd., Bedford, Ohio ("Site 2"), for a total exceeding $100,000.

8. In or around March 2024, Wash N Go purchased Micrologic equipment, kiosks, credit card systems, and related software for its third location at 4680 Northfield Rd., Bedford, Ohio ("Site 3"), for $113,931.93. 30. In or around March 10, 2025, Defendant transmitted written notice terminating maintenance and support agreements. A true and accurate copy of the Termination Letter is attached as **Exhibit 1**. The purchase, estimate, equipment specifications, and contractual documents for the Site 3 installation are attached collectively as **Exhibit 2** and are incorporated herein by reference.

9. Each site was subject to Micrologic's support and maintenance agreements, which were represented as providing ongoing service, updates, troubleshooting, and operational support of the equipment purchased. Representative maintenance agreements and invoices, including Site 2, are attached as **Exhibit 3**, evidencing Defendant's continuing obligations to maintain, repair, troubleshoot, and support Plaintiff's equipment and software systems.

10. Critically, the detailed terms and conditions—including limitation of liability and forum selection provisions—were not provided to Wash N Go until after it had already agreed to purchase the equipment and services, depriving Wash N Go of meaningful opportunity to negotiate or reject those terms. Under said terms, Wash N Go was advised the terms and conditions were for delivery, construction, and installation.

### B. Site 1 and Site 2 – Early Issues and Ongoing Problems

11. Beginning shortly after installation at Site 1 and Site 2, Wash N Go experienced recurring issues with Micrologic's systems, including:

a. Malfunctioning credit card readers

b. System crashes and outages

c. Inconsistent payment processing

d. Software errors affecting daily operations

12. Micrologic repeatedly represented that such issues would be corrected, updated,

or replaced, including that EMV readers were to be updated at Site 2.

13. Despite such assurances, the problems persisted, and Wash N Go was forced to repeatedly contact Micrologic for support and repairs.

**C. Site 3 – Escalation of Failures and Systemic Breakdown**

14. Following installation of Site 3 equipment in or around June, 2024, the system failures became significantly worse and more frequent.

15. The Site 3 system suffered from numerous defects, including:

a. Blacked-out and nonfunctional screens

b. Malfunctioning gates requiring manual lifting

c. Failure of credit card and EMV payment systems

d. System crashes rendering operations inoperable

e. Removal or failure of gift card functionality

f. Promotional system errors causing financial loss

g. Point of Sale would produce 2 washes when rewash button was pressed, throwing the Q out of order unless one of the rewashes was deleted.

16. Wash N Go repeatedly notified Micrologic of the continuing failures through emails, telephone calls, service tickets, text messages, and direct communications with Defendant's employees and management. Representative complaint logs, technical emails, and service communications are attached as **Exhibit 4**. These documents demonstrate Defendant's actual knowledge of the recurring defects and repeated assurances that repairs would be made.

17. Over a period of approximately from July 25, 2024 to June 25, 2025, Wash N Go logged over 250 service calls and tickets related to system failures. Between approximately November 2024 and March 2025, Plaintiff generated hundreds of service requests relating to continuing failures of the Micrologic system. Representative ticket numbers documenting those issues are attached as **Exhibit 6**. These records reflect the extraordinary frequency of failures requiring Defendant's intervention and Defendant's inability or unwillingness to permanently correct those problems.

18. Despite this volume of complaints, Micrologic failed to timely repair or resolve the issues.

19. Rather than promptly correcting the ongoing failures, Defendant repeatedly delayed repairs, required repeated troubleshooting efforts by Plaintiff's employees, and

frequently required temporary workarounds rather than permanent solutions, resulting in continuing interruptions of Plaintiff's business operations.

**D. Impact on Business Operations**

20. Wash N Go operated a subscription-based "unlimited wash" model, which depended on reliable system functionality.

21. Due to Micrologic's failures:

a. Customers were unable to access services

b. Subscriptions were canceled

c. Refunds were issued

d. Customer goodwill was lost

22. These failures directly resulted in lost revenue, lost customers, and operational disruption.

**E. Misrepresentations and Bait-and-Switch Conduct**

23. Micrologic represented that its systems would include:

a. Modern EMV-compliant credit card readers

b. Fully functional gift card systems

c. Updated and integrated software systems

d. Reliable and continuous operational support

24. In reality:

a. Outdated or non-functional components were installed

b. Promised features were never delivered or were later removed

c. New installations used outdated software

25. At Site 3, Micrologic represented the system as a new upgraded system, but installed older software and components. The equipment sold for Site 3 was represented as a new and upgraded system. Plaintiff contends the installation instead utilized outdated software and components which failed to perform as represented, despite the substantial purchase price reflected in **Exhibit 2**.

26. Micrologic also co-developed software functionality with Wash N Go and later removed support for that functionality, forcing Wash N Go to incur additional costs.

**F. Promotion Error and Coercive Conduct**

27. Micrologic implemented or controlled promotional systems that resulted in a

pricing error causing approximately $10,000 in losses.

28. When Wash N Go requested correction, Micrologic demanded that Wash N Go waive legal claims in exchange for fixing the issue.

29. This conduct constitutes bad faith, coercion, and further breach of contractual obligations.

**G. Termination of Agreements**

30. On or about March 10, 2025, Defendant transmitted written notice terminating the maintenance and support agreements for all three locations. A true and accurate copy of the Termination Letter is attached as **Exhibit 1**. The stated reasons asserted in the letter were pretextual and followed months of Plaintiff's repeated complaints concerning defective equipment, software failures, and Defendant's inability to adequately support its own systems.

31. The notice purported to terminate the relationship within six months and cited alleged conduct by Wash N Go toward Micrologic employees.

32. The stated reasons were pretextual and occurred after Wash N Go complained about defective systems and service failures. Prior to the Termination Letter, Plaintiff had repeatedly escalated its concerns to Defendant's management, including Defendant's Vice President, Dean Lecky. Representative text communications are attached as **Exhibit 5** and demonstrate Defendant's knowledge of Plaintiff's ongoing concerns, attempts to resolve the matter, and Defendant's awareness of the seriousness of the operational failures.

33. Despite the stated six-month termination period, Micrologic terminated support and maintenance services several weeks early, in breach of its obligations.

**H. Withholding of Data and Business Interference**

34. Micrologic denied Wash N Go access to its "Wash Assist" system, including customer data and subscription information as well as yearly financial statements. Following termination, Defendant refused to provide Plaintiff with unrestricted access to its own customer information, including "Wash Assist" data, unlimited membership information, historical operating information, and other business records necessary to continue operations. Defendant's refusal substantially interfered with Plaintiff's transition to replacement equipment and required Plaintiff to recreate customer information manually.

35. Micrologic demanded payment (approximately $14,000) for release of such data.

36. As a result, Wash N Go was forced to:

a. Manually reconstruct customer databases

b. Re-enter customer information

c. Operate without accurate subscription data

37. This caused additional financial loss, inefficiency, and customer attrition.

**I. Proprietary Lock-In and Unusable Equipment**

38. Micrologic's systems are proprietary, encrypted, and restricted such that:

a. Third-party vendors cannot service them

b. Equipment cannot be reused or integrated

39. Wash N Go was informed that using third-party service providers could expose it to litigation.

40. As a result, Wash N Go was forced to abandon the equipment.

41. The equipment is now effectively worthless, while Micrologic retained full payment.

42. Defendant further advised Plaintiff that if Plaintiff retained another company to service or modify the Micrologic equipment, such company could be accused of improperly utilizing Defendant's proprietary software or intellectual property. Plaintiff reasonably believed such actions could expose Plaintiff and any replacement vendor to litigation, effectively preventing Plaintiff from utilizing equipment for which it had paid hundreds of thousands of dollars.

**J. Defendant's Knowledge of Defects**

43. Defendant possessed actual knowledge of the recurring defects affecting Plaintiff's systems.

44. Defendant's knowledge is evidenced by:

a. hundreds of service calls;

b. technical support emails;

c. service ticket history;

d. communications with Defendant's account representatives;

e. communications with Defendant's Vice President;

f. repeated troubleshooting efforts over many months.

45. Despite this knowledge, Defendant failed to permanently correct the problems and instead ultimately elected to terminate Plaintiff's maintenance agreements after Plaintiff

continued demanding repairs.

**K. Replacement Costs and Additional Damages**

46. Wash N Go was forced to purchase replacement systems at a cost exceeding $350,000.

47. Wash N Go incurred additional costs of approximately $27,000 per site for 1 vendor and $20,000 per site for a 2nd vendor for:

a. Removal of existing equipment

b. Excavation and demolition

c. Rewiring and installation

48. Wash N Go also incurred:

a. Increased monthly maintenance costs

b. Labor costs for data re-entry

c. Ongoing operational losses

**K. Emotional Distress**

49. As a direct and proximate result of Defendant's conduct, Plaintiff John Knoble suffered severe personal and emotional distress beyond that ordinarily associated with a commercial dispute.

50. Defendant's actions—including the repeated system failures, refusal to repair critical operational issues, premature termination of support, withholding of essential business data, and creation of an impossible transition period—placed extraordinary financial and operational pressure on Knoble.

51. As a result, Knoble was required to expend extensive time and effort attempting to maintain business operations, including responding to system failures, addressing customer complaints, and manually reconstructing customer data after Defendant withheld access.

52. Defendant's conduct caused Knoble to experience significant financial distress, including but not limited to business losses, increased operational costs, and personal financial strain.

53. Upon information and belief, Defendant knew or should have known that its actions—particularly terminating support prematurely while withholding essential data—would cause severe emotional and financial distress to Plaintiff Knoble.

54. As a direct and proximate result of Defendant's conduct, Knoble suffered emotional distress, including anxiety, stress, and related physical manifestations, the full extent of which is continuing to be evaluated and treated. As a direct result of Defendant's conduct, Plaintiff's principal suffered:

a. Severe stress and financial hardship

b. Impact on health and existing medical conditions

c. Personal and family strain

55. Plaintiff has been diagnosed with PTSD as a result on the circumstances and his medical condition has been exacerbated by the conduct of Defendant.

56. The allegations set forth above represent only representative examples of Defendant's conduct. Plaintiff anticipates discovery will reveal numerous additional communications, service requests, internal Micrologic records, and other evidence further demonstrating Defendant's knowledge of the persistent defects, repeated failures to repair, and bad-faith termination of the parties' business relationship

**JURISDICTION**

57. Plaintiff realleges lines 1-56 as if fully rewritten herein.

58. This Court has jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction).

59. The amount in controversy exceeds $75,000, exclusive of interest and costs.

60. Venue is proper in this District under 28 U.S.C. § 1391 because:

a. The equipment was installed, operated, and failed in Ohio

b. The injuries and damages occurred in Ohio

c. Defendant transacted business in Ohio

61. Any forum-selection clause purporting to require litigation in New Jersey is unenforceable because:

a. Micrologic materially breached the agreements first by failing to provide functioning equipment and terminating support prematurely.

b. Micrologic acted in bad faith, including withholding critical operational data and coercive conduct.

c. The contractual terms, including forum provisions, were not provided until after Wash N Go had already agreed to purchase equipment and services, rendering them procedurally unconscionable and the product of overreaching.

d. Enforcement would be unreasonable and unjust given the Ohio-centered performance, witnesses, and damages.

**COUNT I – BREACH OF CONTRACT**

62. Plaintiff realleges and incorporates paragraphs 1–61 as if fully rewritten herein.

63. Plaintiff and Defendant entered into valid and enforceable contracts for the purchase of equipment and ongoing maintenance and support services for Sites 1, 2, and 3.

64. Under the agreements, Defendant was required to provide:

a. Functional car wash equipment and systems;

b. Ongoing maintenance, support, and troubleshooting;

c. Software updates and operational assistance;

d. A six-month transition period upon termination; and

e. Continued access to Plaintiff's operational data, including customer and subscription information.

65. Defendant materially breached the agreements by:

a. Providing defective and nonfunctional equipment;

b. Failing to timely repair or resolve known issues;

c. Failing to provide functional systems necessary to operate Plaintiff's business;

d. Prematurely terminating support and maintenance services before the expiration of the agreed six-month period;

e. Withholding critical customer and operational data; and

f. Conditioning performance on improper waiver of Plaintiff's rights.

66. Defendant's breaches were substantial and went to the essence of the agreements.

67. As a direct and proximate result of Defendant's breaches, Plaintiff suffered damages including, but not limited to:

a. Loss of customers and revenue;

b. Refunds and lost subscriptions;

c. Replacement equipment costs;

d. Removal, excavation, and rewiring expenses;

e. Labor costs and operational inefficiencies; and

f. Ongoing increased operating expenses.

68. Defendant's conduct was willful, knowing, and in bad faith.

WHEREFORE, Plaintiff demands judgment against Defendant for compensatory damages, consequential damages, interest, costs, and all further relief.

**COUNT II – BREACH OF WARRANTIES**

69. Plaintiff realleges paragraphs 1–68 as if fully rewritten herein.

70. Defendant expressly and impliedly warranted that:

a. The equipment would function as intended;

b. The systems would be reliable and operational;

c. The equipment was fit for its intended purpose; and

d. The systems would support Plaintiff's car wash operations, including payment processing and customer management.

71. Defendant breached these warranties by providing equipment and systems that:

a. Frequently failed and malfunctioned;

b. Could not reliably process payments;

c. Crashed and caused operational interruptions; and

d. Failed to deliver promised functionality.

72. Defendant further breached warranties by failing to repair or replace defective systems within a reasonable time.

73. As a direct and proximate result, Plaintiff suffered damages as described above.

WHEREFORE, Plaintiff demands judgment against Defendant for damages and all relief available under law.

**COUNT III – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

74. Plaintiff realleges paragraphs 1–73 as if fully rewritten herein.

75. Every contract between Plaintiff and Defendant contained an implied covenant of good faith and fair dealing.

76. Defendant breached this covenant by acting in bad faith, including:

a. Terminating support in retaliation for Plaintiff's complaints;

b. Prematurely cutting off services despite a six-month transition period;

c. Withholding critical business data;

d. Demanding waiver of claims as a condition of performance;

e. Deliberately delaying or refusing to fix known defects; and

f. Structuring systems in a manner that prevented third-party servicing.

77. Defendant's conduct deprived Plaintiff of the benefit of its agreements.

78. As a direct and proximate result, Plaintiff suffered damages.

WHEREFORE, Plaintiff demands judgment accordingly.

**COUNT IV – UNJUST ENRICHMENT (IN THE ALTERNATIVE)**

79. Plaintiff realleges paragraphs 1–78 as if fully rewritten herein.

80. Plaintiff conferred substantial benefits upon Defendant, including payment exceeding $350,000 for equipment and services.

81. Defendant retained those benefits while providing:

a. Defective and nonfunctional systems;

b. Equipment that cannot be used by third parties; and

c. No meaningful residual value to Plaintiff.

82. Defendant's retention of such benefits without providing equivalent value is unjust.

83. Plaintiff has suffered damages including the cost of equipment, removal, storage, and replacement.

WHEREFORE, Plaintiff demands restitution and all equitable relief.

**COUNT V – DECEPTIVE TRADE PRACTICES / FRAUD**

84. Plaintiff realleges paragraphs 1–83 as if fully rewritten herein.

85. Defendant made material representations to Plaintiff, including that:

a. The systems would include modern EMV-compliant readers;

b. The systems would provide reliable payment and operational functionality;

c. The systems would include specific features such as gift card functionality;

d. The systems were upgraded and current technology.

86. These representations were false.

87. Defendant knew or recklessly disregarded that such representations were false.

88. Plaintiff reasonably relied on these representations in purchasing the equipment.

89. Defendant engaged in a pattern of conduct in which it:

a. Promised advanced functionality;

b. Delivered inferior or nonfunctional systems;

c. Failed to correct deficiencies; and

d. Removed or disabled features after installation.

90. As a direct and proximate result, Plaintiff suffered substantial damages.

91. Defendant's conduct was willful, malicious, and warrants punitive damages.

WHEREFORE, Plaintiff demands compensatory and punitive damages.

## COUNT VI – INTENTIONAL/RECKLESS/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

92. Plaintiff realleges paragraphs 1–91 as if fully rewritten herein.

93. Defendant's conduct was extreme and outrageous, including:

a. Premature termination of critical business services;

b. Withholding essential operational data;

c. Creating an impossible transition scenario; and

d. Causing severe financial distress.

94. Defendant knew or should have known its conduct would cause severe emotional distress.

95. As a direct result, Plaintiff's principal suffered severe emotional distress, including exacerbation of medical conditions and significant personal hardship.

96. Defendant's conduct exceeds all bounds of decency.

**WHEREFORE**, Plaintiff demands damages for emotional distress.

a. Compensatory damages in an amount to be determined at trial that will fully and fairly compensate Plaintiff John Knoble for the emotional distress, mental anguish, psychological injuries, physical manifestations thereof, pain and suffering, humiliation, inconvenience, loss of enjoyment of life, and all other injuries and damages sustained as a direct and proximate result of Defendant's conduct;

b. Past and future medical, psychological, counseling, therapy, prescription medication, and related expenses incurred or reasonably certain to be incurred as a result of Defendant's conduct;

c. Punitive damages, to the extent recoverable under Ohio law on Plaintiff's tort claims, in an amount sufficient to punish Defendant for its willful, malicious, reckless, and bad-faith conduct;

d. Pre-judgment and post-judgment interest as provided by law;

e. Costs of this action, together with such attorney's fees as may be recoverable by statute, contract, or other applicable law; and

f. Such other and further legal and equitable relief as this Court deems just and proper.

**WHEREFORE**, Plaintiff JLJN Inc. dba Wash N Go, LLC respectfully demands judgment against Defendant Micrologic Associates, LLC as follows:

a. Compensatory damages in an amount to be determined at trial, but in excess of $75,000, including but not limited to:

Equipment purchase costs exceeding $350,000;

Replacement equipment costs exceeding $350,000;

Removal, excavation, and rewiring costs (approximately $27,000 per site);

Labor costs associated with manual data reconstruction;

Lost business, customers, subscriptions, and revenue;

Increased ongoing operational expenses;

Interest on monies to fund project.

b. Consequential damages resulting from Defendant's breaches, including business interruption, customer loss, and reputational harm;

c. Punitive and exemplary damages for Defendant's willful, malicious, and bad-faith conduct, including but not limited to deceptive practices, coercion, and intentional misconduct; Defendant's conduct demonstrates a pattern of knowingly providing defective systems, withholding critical data, and leveraging proprietary control to extract payment and avoid accountability, thereby justifying an award of punitive damages to deter similar conduct.

d. Restitution and disgorgement of monies unjustly retained by Defendant;

e. Attorney's fees and costs of litigation as permitted by law;

f. Pre-judgment and post-judgment interest as allowed by law;

g. Equitable relief, including but not limited to:

An order requiring Defendant to release all customer and operational data;

Any other equitable remedies deemed appropriate by the Court;

h. All other relief to which Plaintiff is entitled in law or equity.

i. Compensatory and punitive damages on behalf of Plaintiff John Knoble for emotional distress and related injuries.

Respectfully submitted,

*/s/ Ricardo J. Cardenas*____________________
Ricardo J. Cardenas (0067265)
rcardenas@crk-law.com
CRK Law, LLC
4770 Beidler Rd., Front
Willoughby, Ohio 44094
Direct: 440.499.4540
Facsimile: 440.745.0800

**ATTORNEY FOR PLAINTIFFS**

**JURY DEMAND**

Plaintiff demands a trial by jury upon all issues in the above-captioned matter.

*/s/ Ricardo J. Cardenas*__________
Ricardo J. Cardenas (0067265)